IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| JOSHUA ANDREW,<br><br>                Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>                Defendant. | Case #4:20-cv-00062-PK<br><br><br>MEMORANDUM DECISION<br>AND ORDER<br><br><br>Magistrate Judge Paul Kohler |

Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. After review of the record, the parties' briefs, and oral arguments presented on May 11, 2021, the Court concludes that the Commissioner's decision is supported by substantial evidence and legally sound and will, therefore, affirm the Commissioner's decision.

## I.    STANDARD OF REVIEW

As the Supreme Court has reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id*. (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The Court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). That is, in reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the Court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

Additionally, the federal "harmless error" statute, 28 U.S.C. § 2111, instructs courts to review cases for errors of law without regard to errors that do not affect the parties' substantive rights. *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). The Supreme Court has explained that "the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Id.* at 409 (2009) (internal quotation marks and citation omitted). The Supreme Court further explained that, "[t]o say that the claimant has the 'burden' of showing that an error was harmful is not to impose a complex system of 'burden shifting' rules or a particularly onerous requirement." *Id.* at 410. "If, for example, the party seeking an affirmance makes a strong argument that the evidence on the point was overwhelming

Page 2

regardless, it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary." *Id.*

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for benefits in October 2016 (Tr. 204-07). Plaintiff's claim was denied initially and on reconsideration (Tr. 56-119, 122-29, 132-37). On May 21, 2019, following a hearing, an ALJ found that Plaintiff was not under a "disability" as defined in the Act (Tr. 7-30). On May 6, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. 20 C.F.R. § 422.210.[1]

### B. Relevant factual backgound

At 78 inches tall and weighing 535 pounds at one point, Plaintiff was obese (Tr. 335). In addition, he had degenerative disc disease of the lumbar spine and bilateral hips, venous insufficiency, hernias, abscesses, and major depression (*see* Tr. 12-13, 16-20). Plaintiff claimed that he could not ambulate effectively, testifying that he needed to use a walker "for absolutely everything" (Tr. 42). The walker was not prescribed by Plaintiff's doctors, but they did observe that he used one (Tr. 255, 348-49, 362, 365). He was able to perform numerous activities of daily living, including driving, mowing the lawn, and caring for his parents (Tr. 251, 334).

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2019 edition, which was in effect when the ALJ issued his decision.

Plaintiff attended a consultative medical exam with Adam Kilian, M.D., who noted that Plaintiff brought a walker to the appointment, but did not use it (Tr. 326). Dr. Kilian opined that Plaintiff had no limitations on standing or walking, but nevertheless needed a walker while ambulating intermediate or long distances (Tr. 330). Two State agency physicians reviewed the evidence, including Dr. Kilian's assessment, and found that Plaintiff's impairments did not equal or medically equal the requirements of any section of the Listings,[2] and that he could stand or walk four hours in an eight-hour day (Tr. 80-81, 97-99). Treatment providers, including Rox Burkett, M.D., and physician assistant Luke Swank, opined he was able to walk less than two hours in an eight-hour work day, but did not mention he would need a walker (Tr. 346, 359). Another treatment provider, Dorian Webb, a nurse, opined that Plaintiff's impairments made it "difficult for him to stand for long periods of time and lift heavy objects" (Tr. 373). Treatment records show that the few times Plaintiff saw Dr. Burkett, Mr. Swank, and Ms. Webb, it was more often to obtain disability paperwork than to seek treatment (*see. e.g.*, Tr. 348, 349, 351, 365, 367).

C.   **The ALJ's Decision**

The ALJ applied the five-step sequential evaluation process and determined that Plaintiff was not disabled (Tr. 7-30). The five-step sequential evaluation for assessing disability directs the ALJ to consider: 1) whether the claimant is currently working; 2) if the claimant has a severe impairment; 3) if the impairment(s) meet or medically equal an impairment listed in Appendix 1;

---

[2] The Listing of Impairments (Listings) are found at 20 C.F.R. pt. 404, subpt. P, app. 1. They are used to determine whether a claimant's impairments are severe enough to be presumptively disabling. 20 C.F.R. §§ 404.1525, 416.925.

4) if the impairment(s) prevent the claimant from doing past relevant work; and 5) if the impairment(s) prevent the claimant from doing any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After careful consideration of the entire record, the ALJ found that Plaintiff had severe impairments that included morbid obesity, degenerative disc disease of the lumbar spine, and degenerative joint disease of the bilateral hips (Tr. 12). However, the ALJ found that he did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings (Tr. 15). The ALJ determined that Plaintiff retained the residual functional capacity to perform light work with a sit/stand option at will (Tr. 16). The ALJ found that Plaintiff's impairments would not preclude him from performing work that exists in significant numbers in the national economy, including work as a packager, inspector, and assembler (Tr. 23). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 24).

### III. DISCUSSION

On appeal, Plaintiff raises two issue. First, he alleges that the ALJ erred as a matter of law by failing to discuss why his impairments did not medically equal the requirements of the Listings. Specifically, he claims that the ALJ erred by not explaining why he did not find Plaintiff had not shown he was unable ambulate effectively. Plaintiff also alleges that the ALJ erred in assessing his residual functional capacity, claiming that substantial evidence did not support the limitation to light work with the option to sit and stand at will, given his need to use a walker and his complaints of hernia-related limitations.

As to the first argument, the Court finds that, while the ALJ did not discuss the inability to ambulate effectively at step three, the ALJ's findings at other steps of the sequential evaluation process provide a proper basis for upholding the step three conclusion that Plaintiff's impairments do not meet or equal any listed impairment. As to the second argument, the Court finds that the ALJ's assessment of Plaintiff's residual functional capacity is free of legal error and supported by substantial evidence.

A. **The ALJ did not commit reversible error when finding that Plaintiff's obesity did not medically equal the requirements of any section of the Listings**

Under circuit precedent, an ALJ must explain why he did not find a claimant's impairments met or medically equaled the requirements of the Listings. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that a bare conclusion that a claimant did not meet the requirements of the Listings "is beyond meaningful judicial review"). However, that explanation does not need to be in the portion of the decision where the ALJ discusses the Listings. Rather, the Court will find no reversible error where the basis for ALJ's step three finding is found in other parts of the decision. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment"); *see also* 42 U.S.C. § 405(b)(1) (adverse decisions must state "the reason or reasons upon which it is based"); Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *4 (Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation

process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3).

Here, although not in the step three portion of the decision, the ALJ's decision is sufficient because it provides the rationale for why he found that Plaintiff's obesity did not meet or medically equal the requirements of Listings 1.02 and 1.04,[3] i.e., Plaintiff has not met his burden of showing he was unable to ambulate effectively.[4] *Fischer-Ross,* 431 F.3d at 733 (at step three, claimant has burden to present evidence showing he met or equaled a listing).

The ALJ's residual functional capacity narrative provides rationale for the Court to determine the basis for his findings at step three, as it shows that Plaintiff did not meet his burden of showing he could not ambulate effectively. The ALJ discussed medical evidence showing that Plaintiff had not met his burden. He noted that no medical source had opined that Plaintiff met the requirement of the Listings, i.e., that he was unable to ambulate effectively (Tr. 15). Indeed, the State agency physicians found that Plaintiff's impairments did not meet or

---

[3] After the ALJ issued his decision, the Commissioner revised the sections of the Listings addressing musculoskeletal impairments. *See* 85 Fed. Reg. 78164, available at https://www.govinfo.gov/content/pkg/FR-2020-12-03/pdf/2020-25250.pdf. The final rule indicates that the Commissioner expects "that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." 85 Fed. Reg. 78164 n.2.

[4] "For a claimant to show that his impairment matches a listing, it must meet ***all*** of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Lax*, 489 F.3d at 1085 ("To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."). An impairment will be deemed medically equivalent to a listing if the medical findings are at least equal in severity and duration to the listed findings. *Puckett v. Chater*, 100 F.3d 730, 733 (10th Cir. 1996).

Page 7

medically equal the requirements of the Listings, and that he could walk four hours out of an eight-hour day, without mentioning that he needed to use an assistive device (Tr. 77-81, 95-99). These findings effectively meant that they found Plaintiff had not met his burden to prove that he was unable to ambulate effectively. *See* SSR 17-2p, 2017 WL 3928306, at *2-3 (the sequential evaluation continues only when the State agency medical consultants find an impairment does not meet or medically equal the requirements of the Listings). The ALJ gave great weight to both opinions (Tr. 20). Moreover, Dr. Kilian opined that Plaintiff had no walking limitations (Tr. 330). The ALJ gave the opinion little weight, but only because it was an *underestimate* of Plaintiff's limitations (Tr. 20). Plaintiff does not suggest that the ALJ erred in according weight to the opinions and has waived his right to do so. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

There was evidence that might have supported a different conclusion, but the ALJ explained why he did not accept it. *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Most notably, Plaintiff claimed he needed to use a walker for almost every activity (*see, e.g.*, Tr. 42). The ALJ acknowledged these allegations (Tr. 16-28). However, the ALJ evaluated the symptoms as required by the regulations and circuit precedent, finding them unpersuasive, citing numerous inconsistencies in the record (Tr. 16-22). *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3, 2017 WL 5180304; *Luna v. Bowen*,

834 F.2d 161, 165 (10th Cir. 1987). The Court finds the ALJ reasonably evaluated Plaintiff's symptoms.

There was other evidence in the record supporting the ALJ's finding that Plaintiff had not met his burden of showing he could not ambulate effectively. The regulations define effective ambulation as the ability to walk a sufficient distance to be able to carry out activities of daily living. 20 C.F.R. pt. 404, supt. 4, § 1.00B.2.b.2. As the ALJ noted, Plaintiff told Dr. Killian he was able to get in and out of bed, dress and bathe himself, drive, cook, and clean for himself (Tr. 17; see Tr. 325). Furthermore, Plaintiff reported that he kept his room clean and mowed the lawn (one or two strips at a time) (Tr. 251). In addition, he said he had been a caretaker for his parents (Tr. 334). These activities undermined Plaintiff's suggestion that he was unable to ambulate effectively. *Zebley*, 493 U.S. at 530 (1990); 20 C.F.R. pt. 404, supt. 4, § 1.00B.2.b.2.

Plaintiff asserts that the ALJ did not address his inability to ambulate effectively. He alleges that "the only portion of the decision that can even arguably address [his] ability to ambulate is his observation that [he] 'brought a four-wheeled walker to the exam, but an assistive device was not used in the exam room'" (Pl. Br. at 8 (citing Tr. 19)). Plaintiff overlooks the ALJ's acknowledgement that Plaintiff claimed he needed a walker when he went to a consultative psychological examination (Tr. 13). He does not recognize that the ALJ noted three times that he and his mother both claimed that he needed a walker (Tr. 16-18). He fails to credit the ALJ for discussing a treatment note showing that he used a walker during a medical examination (Tr. 20). He neglects to mention that the ALJ wrote that another physician noted that he claimed he needed to use a walker (Tr. 21). Thus, these statements belie Plaintiff's

Page 9

suggestion that the ALJ did not discuss his ability to ambulate effectively.  To the extent that Plaintiff claims that the evidence supports a different conclusion, he is asking the Court to reweigh the evidence, which it cannot do.  *Lax*, 489 F.3d at 1084 (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner).

Plaintiff suggests that Dr. Kilian's report was not evidence that he could ambulate effectively because "it is clear . . . no ambulation without an assistive device took place out of the exam room" (Pl. Br. at 9).  This is an unsupported assumption.  In addition to noting that Plaintiff did not use an assistive device in the examination room, Dr. Kilian noted that, "ambulation was observed and appeared normal and symmetric" (Tr. 326).  He did not state that his observation was solely within the examination room.  In any case, Plaintiff has not shown that it is inappropriate for an acceptable medical source to opine on a claimant's abilities based upon a clinical examination.

**B.    The ALJ reasonably did not include the need for an assistive device in the residual functional capacity assessment**

Related to the issue of whether Plaintiff could ambulate effectively was whether he needed to use an assistive device.  The ALJ reasonably did not include the need to use an assistive device in the residual functional capacity (Tr. 16).  In order for an assistive device to be included in the residual functional capacity, it must be medically required, i.e., "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  SSR 96-9p, 1996 WL 374185, at *7.  As noted above, although Plaintiff testified he needed a walker, he said that his

Page 10

mother had purchased it for him, not that it was prescribed (Tr. 255). The closest evidence that comes to showing he needed an assistive device was Dr. Kilian's recommendation that he use a "walker occasionally for intermediate distances and longer distances" (Tr. 330). This was not a recommendation that exceeded the residual functional capacity found by the ALJ, which allowed for sitting and standing at will (Tr. 19). Furthermore, it would not have impacted Plaintiff's ability to perform the jobs identified by the vocational expert, all of which were "bench work" (Tr. 52). In other words, the jobs did not require walking even intermediate distances. Indeed, "[l]ight work usually . . .. [is p]erformed primarily in one location with the ability to stand being more critical that the ability to walk." DI 25001.001A.43, *Medical and Vocational Quick Reference Guide* (available at http://policynet.ba.ssa.gov/poms.nsf/lnx/0425001001 (last visited February 18, 2021)); *cf.* SSR 96-9p, 1996 WL 374185, at *7 ("if a medically required hand-held assistive device is needed only for prolonged ambulation . . . the unskilled sedentary occupational base will not ordinarily be significantly eroded").[5]

      The Court further observes that Plaintiff's treatment providers noted on a number of occasions that he was using a walker (*see* Tr. 348-49, 362, 365). It is readily apparent that the ALJ did not take these notes to mean that the treatment providers were prescribing a walker, or opining that a walker was necessary. This finding was reasonable. Consequently, the Court will not disturb it, even though it is possible to draw a different conclusion. *Lax,* 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] Although SSR 96-9p applies to the sedentary job base and the residual functional capacity was for light work, the Court finds that it is relevant here, because the jobs identified by the vocational expert did not require prolonged walking.

administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

**C.  The ALJ reasonably found Plaintiff retained the residual functional capacity to perform light work with the option to sit and stand at will**

Plaintiff claims that the residual functional capacity is defective because the ALJ did not consider all of his impairments, including hernias, abscesses, and venous insufficiency (Pl. Br. at 9-10). This argument is not persuasive. The ALJ discussed each of these in detail in the residual functional capacity narrative (Tr. 16-22). No physician opined that these impairments caused any limitations beyond what the ALJ found. To the contrary, the State agency physicians and Dr. Kilian considered these impairments and still found Plaintiff did not have limitations that exceeded the residual functional capacity (Tr. 80-81, 97-99, 330). Moreover, when asked what limitations his hernias caused, Plaintiff simply alleged that they prevented him from lifting over 30 pounds (Tr. 323). This was well within the residual functional capacity found by the ALJ, i.e., light work. *See* 20 C.F.R. §§ 404.967(b); 416.967(b) (light work involves lifting a maximum of 20 pounds). As for venous insufficiency, Plaintiff attributed no limitations to this impairment, which was only observed by a physician's assistant, Mr. Swank (Tr. 359). Mr. Swank only prescribed compression stockings to alleviate any symptoms (Tr. 363). In fact, when assessing Plaintiff's limitations, Mr. Swank did not mention a diagnosis of venous insufficiency (Tr. 359). The Court should find without merit the claim that the ALJ did not consider limitations caused by hernias, abscesses, and venous insufficiency.

For the purposes of Plaintiff's claims, which were filed prior to March 27, 2017 (Tr. 200-07), Mr. Swank was not an acceptable medical source. 20 C.F.R. §§ 404.1502(a), 416.902(a). Therefore, the ALJ merely needed to write a decision in such a manner that the Court could follow his reasoning. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); *Keyes-Zachary*, 695 F.3d at 1163 ("In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'").

In this case, the ALJ's reasoning is sufficient for the Court to follow. The ALJ had given little weight to a nearly identical opinion from an acceptable medical source, Dr. Burkett, citing reasons supported by the evidence for doing so, including the fact that the opinion was not supported by the evidence in the record (Tr. 21). It follows, that the ALJ would give less weight to a less probative opinion with the same limitations. The ALJ also gave little weight to Dr. Burkett's opinion because the source had a fleeting relationship with Plaintiff (Tr. 21). This was the same reason the ALJ gave for according Mr. Swank's opinion little weight (Tr. 21). It was a good reason, supported by the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *Arterberry v. Berryhill*, 743 F. App'x 227, 229 (10th Cir. 2018) (unpublished) ("Very infrequent" medical visits support discounting a treating physician's opinion. (citing Branum v. Barnhart, 385 F.3d 1268, 1275-76 (10th Cir. 2004))). The Court finds that it can follow the ALJ's reasoning.

The ALJ gave another reason for finding Mr. Swank's opinion entitled to little weight (Tr. 21), which Plaintiff objects to (Pl. Br. at 10). Specifically, Plaintiff alleges that the ALJ made a confusing finding (Pl. Br. at 10), when he observed that "Swank notes that the claimant's

Page 13

condition was dependent on his weight and was complicated by a fungal infection, neither of which were unchanging and, therefore, his opinion appears to be speculative" (Tr. 22). Plaintiff has not shown that, even if the Court finds the second reason was improper, he was harmed. *Cf. Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) (unpublished) (affirming the ALJ's credibility determination despite finding two of the reasons given by the ALJ were not supported by substantial evidence). That is, once again, Plaintiff has not met his burden of showing harmful error. *Sanders*, 556 U.S. at 409.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED: 22 June 2021.

_____
PAUL KOHLER
United States Magistrate Judge